IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RODNEY POWELL,

                Petitioner,

vs.                                      No. CIV 00-1142 JP/LFG

JOE WILLIAMS,

                Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.  This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed August 4, 2000.  Petitioner Rodney Powell ("Powell"), currently confined at Lea County Correctional Facility in Hobbs, New Mexico, challenges the judgment and sentence entered by the Fifth Judicial District Court in State v. Powell, No. CR 96-84 FR (County of Lea, New Mexico).

2.  As grounds for federal habeas review, Powell asserts: (1) he received ineffective assistance of counsel in connection with his first state habeas petition; (2) he was deprived of due process due to unreasonable delays in processing his first state habeas petition; (3) he was denied an evidentiary hearing and had ineffective assistance on counsel on his motion to determine competency; and (4) the evidence was insufficient to support his conviction.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

### Facts and Procedural History

3.  Powell was convicted on August 13, 1996 of two counts of trafficking cocaine.  He was sentenced to a total of nine years.  (Ex. A to Answer).  He appealed.  His docketing statement was prepared by trial counsel and raised only one issue, that the evidence was insufficient to convict. (Ex. C to Answer).  Following appointment of the appellate public defender, Powell requested that he be allowed to amend his docketing statement to include issues of ineffective assistance of trial counsel in not calling certain witnesses, and a claim of racial bias in jury selection.  The New Mexico Court of Appeals affirmed, holding that the evidence was sufficient to support the conviction, and disallowing amendment of the docketing statement to include the two additional claims "on grounds that the issues he seeks to raise are not viable."  (Memorandum Opinion, <u>State v. Powell</u>, January 2, 1997, Ex. F to Answer, at 1).   Powell's petition for certiorari was denied by the state supreme court on February 2, 1997.  (Ex. H to Answer).

4.  On April 22, 1997, Powell filed his first state habeas petition, raising the same three issues he attempted to raise on direct appeal:  insufficiency of the evidence, ineffectiveness of counsel in not calling witnesses, and bias in jury selection.  (Ex. I to Answer).  Also on April 22, the state trial judge appointed counsel for Powell.  It is unclear from the record whether the appointment was made for the purpose of pursuing the habeas corpus petition, or in connection with Powell's  motion for reconsideration of sentence, filed April 15, 1997, or his motion for credit for pre-trial and/or post-sentence confinement time, filed October 23, 1997.  The state made no response to Powell's petition for habeas corpus, and the petition languished for several months.  It was not until October 1997, and again in January 1998, that the state court ordered a response from the state, and it was not until April 15, 1998 that the state finally responded, filing a motion to dismiss the petition.  (*See* Orders

dated October 23, 1997 and January 22, 1998, included in the Record Proper at unnumbered pages; and Ex. J to Answer). There is no explanation on the record for these delays. On April 15, 1998, the trial court granted the state's motion to dismiss. (Ex. K to Answer).

5. On June 17, 1999, Powell filed a second habeas petition in state court. In this petition, he alleged the following grounds: delay in processing his first petition, ineffective assistance of counsel (apparently referring to the performance of his habeas counsel), failure to provide additional "psychometric testing" as recommended in petitioner's motion to determine competency, and ineffective assistance of counsel by the attorney representing him on the competency issues. (Ex. N to Answer). The state filed a response to this petition, and it was denied on June 25, 1999. (Exs. O, P to Answer). The state supreme court denied certiorari on July 28, 1999. (Ex. R to Answer).

## Discussion

### Ineffective Assistance of Counsel in State Habeas Proceedings

6. Powell's first ground for federal habeas relief is based on his contention that, although the state trial court appointed counsel for his first habeas petition in state court, the attorney did nothing, and he was effectively denied representation in the habeas proceeding. The circumstances are somewhat murky surrounding the apparent appointment of counsel for Powell to pursue a first habeas petition in state court. It is unclear whether counsel was appointed for purposes of habeas, or for one of the other post-conviction motions filed by Powell. His complaint to the State Bar resulted in a finding that the attorney was appointed for purposes of an ultimately successful motion to credit time for pretrial confinement, not for the habeas proceeding. *(See*, unnumbered attachment to Petition for Writ of Habeas Corpus [Doc. 1], letter from The Disciplinary Board to Rodney Powell, dated October 28, 1999). On the other hand, Powell was told in a letter from the office of another attorney

that counsel had been appointed for habeas purposes, with no mention of the motion to credit time, and the record seems to indicate that he represented himself in connection with this motion. *(See, letter from Sean O. Shannon to Rodney Powell, dated January 13, 1998, included as an unnumbered attachment to Petition for Writ of Habeas Corpus [Doc. 1]; Notice of Setting of hearing on September 14, 1998 on Powell's motion for presentence confinement credit, containing handwritten note, "he doesn't have an attorney," included in Record Proper at unnumbered page; and Ex. S to Answer).*

7. The Court need not resolve this factual dispute, however, because even if Powell did have an attorney appointed for habeas corpus purposes, a claim of ineffectiveness of counsel, appointed to pursue a habeas corpus petition in state court, is not cognizable in federal habeas proceedings. There is no constitutional right to counsel in state post-conviction proceedings.  Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987) ("a defendant has no federal constitutional right to counsel . . . when attacking a conviction that has long since become final upon exhaustion of the appellate process"); Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings . . .  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings"); Chaney v. McCotter, 5 F.3d 545 (Table, text in Westlaw), No. 92-2030, 1993 WL 345526, at *3 (10th Cir. Aug. 27, 1993).  Therefore, even if the attorney who may have been appointed to represent Powell on his state habeas claim was ineffective, his remedy is not in this Court.

<u>Delay in Processing State Habeas Petition</u>

8. As noted above, Powell's first state habeas petition was filed in April 1997 and was not decided until April 1998.  It appears from the record that the processing of Powell's petition was not

in accord with the state's procedural rules.  Rule 5-802 (E), N.M.R.A. (2001) provides that, in cases where summary dismissal is not appropriate and the court appoints counsel, the court shall, within 30 days of acceptance of the petition, either order the state to respond to the petition or else dismiss the petition outright.  If the state is ordered to respond, it must file its response within 30 days after service of the order.  The trial judge appears to have appointed counsel, but he did not order a response from the state until many months had passed.  It appears that the state was eventually ordered to respond, on October 23, 1997 (*see* Order of October 23, 1997, included in the Record Proper at an unnumbered page).  The record does not reflect that the state complied with that order within the time allotted by Rule 5-802(E).

9.   The record hints that it may have been Powell's motion for a hearing on his request for pretrial confinement credit, filed January 22, 1998, which prompted the court to issue a second order, filed that date, directing that the state respond to the petition within ten days.  (*See*, Docket Sheet in State v. Powell, CR 96-84, included as an index to the Record Proper, at unnumbered p. 5; Motion for Hearing dated January 22, 1998, included in the Record Proper at an unnumbered page; Order dated January 22, 1998, included in the Record Proper at an unnumbered page).  Inexplicably, the state did not respond to the court's order for two and half months, eventually filing a motion to dismiss the petition on April 15, 1998.  (Ex. J to Answer).  The state court granted the motion, dismissing Powell's petition that same day.  (Ex. K to Answer).

10.   Habeas corpus proceedings are intended to provide "swift, flexible, and summary determination(s)," Preiser v. Rodriguez, 411 U.S. 475, 495, 93 S. Ct. 1827, 1839 (1973), and unreasonable delay in processing a petition for habeas corpus may constitute a violation of petitioner's due process rights.  Jones v. Shell, 572 F.2d 1278, 1280 (8th Cir. 1978); Ruiz v. Cady,

660 F.2d 337 (7th Cir. 1981).

11.   However, the delay generally must have been inordinately long, and/or constitute a pattern of behavior, and/or be accompanied by prejudice to the petitioner, before habeas relief can be granted based on delays in prior habeas proceedings.  <u>Ruiz</u>, at 341 ("Where harm to the petitioner is apparently so slight and other adequate remedies are available, granting the writ by a default judgment amounts to an abuse of discretion"); <u>Stines v. Martin</u>, 849 F.2d 1323 (10th Cir. 1988) (district court abused its discretion in striking a late response by the government and granting the writ of habeas corpus, since the delay was minor, the U.S. Attorney's office had not displayed a pattern of delay, and the court was not deprived of the government's briefing in the matter).  In <u>Caristo v. Sullivan</u>, 112 N.M. 623, 818 P.2d 401 (1991), cited by Powell, the court condemned the delays in two consolidated habeas cases, three and a half, and five years respectively, but found nevertheless that default judgment was not appropriate in either case.

12.  The adage concerning delayed justice is not absolute.  Looking at all of the circumstances in this case, the Court cannot say that the delay involved was unconscionably long.  Nor can the court say that the government displayed a pattern of delay, or that Powell experienced undue prejudice as a result.  While the Court does not condone the state court's failure to act and the state's lack of vigor in responding to the court's orders, these defaults do not rise to the level of constitutional violations, in the context of this case.

13.  In addition, Powell was able to present to the state courts his claim of delay in processing his first habeas petition.  He raised this issue in his second habeas petition.  It was briefed by the state in a timely response, and was rejected by the state trial court.  (Exs. N, O, P to Answer).  Powell filed a lengthy petition for writ of certiorari to the New Mexico Supreme Court in which he argued this

point again. (Ex. Q to Answer). The supreme court denied certiorari. (Ex. R to Answer). The

claim was, thus, adjudicated on the merits in the state courts, and the decision was neither contrary

to nor involved an unreasonable application of clearly established federal law as set forth by the

Supreme Court; furthermore, the state court's decision was not based on an unreasonable

determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Williams v.

Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000).

Motion to Determine Competency

14. Powell's petition for habeas corpus challenges the judgment in State v. Powell, CR 96-84

FR, pursuant to which he was convicted of trafficking in cocaine. [Doc. 1]. Although he includes

in his petition a claim that he should have received further psychological testing in connection with

a motion to determine competency, and a claim that his attorney was ineffective with regard to the

competency proceedings, the issue of competency did not arise in connection with the criminal

proceedings at issue herein.

15. In directing that the state provide the Record Proper in this case, the Court also ordered

the state to explain how the Motion for Forensic Evaluation, and the Order for Forensic Evaluation,

in State v. Powell, No. MSCR-96-61 FR (Exs. U and V to Answer) relate to the case under review

in this habeas petition. [Doc. 17]. In responding to this directive, the state represented as follows:

> A review of the state court record in State v. Powell, No. CR 96-84
> FR, County of Lea, indicates no relationship between the forensic
> evaluation and Petitioner's conviction in CR 96-84. The state court
> record establishes that various proceedings involving Petitioner were
> ongoing and that Petitioner was represented by different counsel
> . . . A Notice of Setting indicates that the motion to determine
> competency [in MSCR 96-61 FR] would be heard on Monday,
> January 13, 1997. Exhibit D. The tape of this hearing is part of the
> state court record. Counsel for Respondents reviewed this tape in

7

> preparing this Response . . .   A review of this tape indicates that CR
> 96-61 concerned a commercial burglary charge . . .   The competency
> determination was made pursuant to this charge . . .   The issue of
> competency raised in MSCR 96-61 was not related to No. CR 96-84
> FR . . .   The state court record fails to show any issue regarding
> competency in No. CR 96-84 FR.   Any issue regarding competency
> in another, separate state court criminal proceeding is unrelated to the
> state court conviction that is the subject of federal habeas corpus
> review.

(Response Filed Pursuant to Order Filed October 19, 2000 [Doc. 18], at 2-3).

16.   The Court's independent review of the state court record in CR 96-84 FR, as well as the
tape of the competency hearing in MSCR 96-61, confirms these representations.  It is a jurisdictional
requirement in a federal  habeas case that the petitioner be "a person in custody pursuant to the
judgment of a State court."  28 U.S.C. § 2254(a).  There is no indication that Powell is currently in
custody on any charges arising from MSCR 96-61, nor that he has exhausted his remedies with regard
to that matter, and those proceedings are therefore not under review in this habeas proceeding.
Powell's claims that he was denied a fair opportunity to present evidence as to his competency, and
that his competency counsel was ineffective, are not cognizable herein.

<u>Sufficiency of the Evidence</u>

17.   Powell raised the issue of sufficiency of the evidence in his direct appeal, as well as in his
state habeas petition.  In the direct appeal, the New Mexico Court of Appeals proposed summary
affirmance on this issue, based on the trial testimony of undercover officer Jessie Orosco, who
testified that on January 19, 1995, he purchased five rocks of crack cocaine from Powell for $100,
and that on January 23, 1995, he purchased six rocks from Powell.  The court of appeals posited that
this evidence was sufficient to support a verdict of guilty with respect to every element essential to
convict Powell for the two counts charged, and the court therefore proposed summary affirmance.

(Ex. D to Answer).

18.  Powell, through the appellate public defender, filed  a memorandum in opposition to the proposed summary affirmance.  He argued that the evidence at trial showed that he had an alibi for the two nights in question, based on the testimony of Powell and his girlfriend, that Officer Orosco must have confused him with another black male who lives at the place where the drugs were sold, that he was the victim of police corruption, and that Orosco "was untruthful and could not be believed."  (Ex. E to Answer, at 2-3).  The court of appeals rejected these arguments, holding:

> Defendant's discussion of evidence favorable to his theory of the case does not persuade us that the evidence outlined in our calendar notice was insufficient to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.  The jury was free to reject Defendant's version of the incident.

(Memorandum Opinion in State v. Powell, January 2, 1997, Ex. F to Answer, at 2).

19.  Powell's sufficiency of the evidence claim was clearly adjudicated on the merits in the state courts.  A federal habeas petition raising such a claim must be dismissed unless the state court decision was contrary to or involved an unreasonable application of clearly established federal law as set forth by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); Williams v. Taylor, *supra*.  To justify federal habeas relief, the decision must not only have been erroneous, but also unreasonable.  Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *petition for cert. filed* 12/8/00).  The Court cannot say that Powell's insufficiency claim meets this stringent standard.

20.  Clearly established Supreme Court law holds that a sufficiency of the evidence claim must be tested by the standard "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  A review of the record indicates that Powell cannot establish that a rational factfinder would never have convicted him on the evidence presented.

21.  Undercover narcotics officer Jessie Orosco ("Orosco") testified that he purchased crack cocaine from Powell on two occasions in January 1995.  The first occasion was January 19, 1995, at approximately 10:10 p.m.  Orosco stated that he was taken behind a residence on South Eighth Street and introduced to Powell by a confidential informant, who told him Powell's name was "Rodney."  Powell also told Orosco that his name was "Rodney."  No last name was given. Immediately after purchasing five rocks of crack cocaine from "Rodney" for $100, Orosco says he met with Hobbs police officer Stanley Durham, who witnessed the purchase and informed Orosco that the name of the person selling the cocaine was Rodney Powell.  Orosco identified Powell from a photograph the next day.  He also identified Powell in court as the man from whom he purchased cocaine.  (Tape of trial proceedings, August 13, 1996, Tape CR2-BA, at counters 10.59-12.40; 13.25; 30.20-31.45; 33.04-33.20; 36.02- 39.00; hereafter identified in the format "Tape 2 at 10.59-12.40").[2]

22.  Orosco further testified that he went back to the residence on January 23, 1995, at approximately 11:30 p.m. and purchased six rocks of crack cocaine, again for $100.  (Tape 2 at 20.12-22.22; 35.45).  On both occasions, the substance which he purchased tested positive in field tests for cocaine, a result confirmed in later expert analysis by the Southern Crime Laboratory in Las Cruces, as described on the stand by forensic chemist Jerry O'Donnell.  (Tape 2 at 13.01-13.19; 16.10-16.30; 22.43; 24.47-25.25; Tape 3 at 11.30-16.45).

---

[2]The tapes were played on a Sony BM-75 machine, which has 47.00 counters per tape side.

23.  Powell took the stand and denied having sold cocaine to Orosco.  He testified that he remembers January 18-19, 1995, because he spent that night in jail, having been arrested for driving with a revoked license.  He left jail at around 4:30 p.m. on January 19, 1995 and went straight back to the apartment which he shared with his fiancee, Annie McDade ("McDade").  At the time, he and McDade had one child and were expecting a second.  Powell testified that he did not leave the apartment that night, as he was babysitting while McDade attended a night class.  He said she was gone until about 10:30 or 11:00 p.m., and that they did not leave the apartment after she arrived home.  (Tape 3 at 18.32-22.11).

24.  Powell also testified that he was home on the evening of January 23, 1995, that he did not leave the apartment at all and did not sell cocaine to Orosco that night.  He said he remembers that night, because it was his sister's birthday and he was probably talking to her on the phone.   (Tape 3 at 22.28-23.41; 26.36).

25.  Powell stated further that a man named Rodney Sanders lived at the address where the cocaine was sold, and that this Rodney Sanders is now serving time in the state penitentiary for trafficking cocaine.  The implication is that Orosco and Stanley Durham got Powell mixed up with Rodney Sanders.  Powell acknowledged on cross-examination, however, that Rodney Sanders is 3-4 inches taller than he is and wears glasses.  (Tape 3 at 23.55-24.05; 22.56-28.26).  Powell also stated that Rodney Sanders was in the penitentiary on January 18 and 23, 1995, although he presumably said this out of confusion.  (Tape 3 at 29.19).  Powell acknowledged knowing Hobbs police officer Stanley Durham, the man who identified him by name to Orosco immediately after the January 19 sale of cocaine.  (Tape 3 at 24.00-25.22).

26. McDade, Powell's fiancee, also testified.  She stated that Powell returned home from jail

on January 19, 1995 and remained in their apartment for the rest of the evening, babysitting their kids while she attended class from 6 to 10 p.m.  (Tape 3 at 31.15-33.07).  She was reminded on cross-examination that she and Powell had only one child on that date.  (Tape 3 at 33.56).  McDade also stated that Powell was home with her on January 23, 1995, although she could not recollect why that exact date stuck in her mind.  (Tape 3 at 33.18; 37.00-37.57).  Powell was not arrested on that date; indeed, he was not arrested until approximately one year after the cocaine sales took place.  (Tape 3 at 24.00; 36.26).  In any event, McDade testified that she does not recall the occasion of Powell's arrest.  (Tape 3 at 36.14).

27.  The Court has reviewed the tape of Powell's trial and cannot say that a reasonable jury would never have convicted Powell on this evidence.  The New Mexico Court of Appeals noted that the jury was free to reject Powell's and McDade's testimony and to believe Orosco's.  This Court does not find that conclusion erroneous or unreasonable and will defer to the state court in accordance with 28 U.S.C. § 2254(d) and Williams v. Taylor.

## **Recommended Disposition**

That the petition be denied and the action be dismissed with prejudice.


Lorenzo F. Garcia
United States Magistrate Judge

12